**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 1:24-cv-4084 |
| TOWNES OF CEDAR RIDGE CONDOMINIUM ASSOCIATION, | ) ) ) | |
| Defendant. | ) ) | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

NOW COMES Plaintiff, THE TRAVELERS INDEMNITY COMPANY OF

CONNECTICUT ("Travelers"), by and through its attorneys, and for its Complaint for

Declaratory Judgment against Defendant, TOWNES OF CEDAR RIDGE CONDOMINIUM

ASSOCIATION ("Townes"), states as follows:

1.      Travelers is a Connecticut corporation with its principal place of business in

Connecticut.

2.      Townes is an Illinois not-for-profit corporation with its principal place of business

in Illinois.

3.      Subject matter jurisdiction is proper in this Court under 28 U.S.C. §1332(a)

because Travelers and Townes are citizens of different states and the amount in controversy

exceeds $75,000, exclusive of interests and costs.

4.      Venue is proper in this District under 28 U.S.C. §1391(b)(1) and (2) because

Townes is a resident in this District as defined by 28 U.S.C. § 1391(c)(2) and (d) and because a

1

substantial part of the events or omissions giving rise to the claim occurred, and a substantial part of property that is the subject of the action is situated, in this District.

5.      Travelers issued property insurance policy number 680-9J703843-18-42 to Townes, effective from September 6, 2018 to September 6, 2019 (the "Policy"), a copy of which is attached hereto as Exhibit A.

6.      The Policy insured Towne's interest in a residential condominium association complex, consisting of approximately 40 buildings, against risks of direct physical loss of or damage to covered property ("the Property"), subject to all the terms, conditions, limitations, and exclusions stated therein.

7.      On May 21, 2019, Townes notified Travelers that the Property had been damaged by a storm on March 14, 2019.

8.      Based on its investigation of the claimed loss, Travelers determined that only some gutters, downspouts and air conditioning units, and one shingle on a single roof at the Property, had plausibly sustained direct physical loss or damage due to wind and/or hail on March 14, 2019.

9.      Travelers accordingly issued payment based on its estimate of $17,140.88 to repair or replace the damage to the components of the Property described above as having plausibly sustained direct physical loss or damage due to wind and/or hail on March 14, 2019.

10.      Townes responded with a $2,078,657.08 estimate which included the cost to replace all 3-tab composite asphalt shingles on all 40 roofs at the Property.

11.      Travelers informed Townes that the cost to replace all 3-tab composite asphalt shingles on all 40 roofs at the Property was not covered under the Policy because what Townes contended was hail and wind damage to them was caused instead by wear and tear and

2

deterioration, causes of loss excluded under the Policy.

12.     The Policy contains the following provision for resolution of certain disputes

through appraisal (the "Appraisal Provision"):

**BUSINESSOWNERS PROPERTY COVERAGE**
**SPECIAL FORM**
**MP T1 02 02 05**
**Page 27 of 39**

**As Modified by**

**ILLINOIS CHANGES**
**IL 01 18 02 17**
**Page 1 of 2**

   **2.  Appraisal**

   If we and you disagree on the value of the property, the amount of Net
   Income and operating expense or the amount of loss, either may make
   written demand for an appraisal of the loss.  In this event, each party
   will select a competent and impartial appraiser.  The two appraisers will
   select an umpire.  If they cannot agree, either may request that selection
   be made by a judge of a court having jurisdiction.  The appraisers will
   state separately the value of the property, the amount of Net Income and
   operating expense or the amount of loss.  If they fail to agree, they will
   submit their differences to the umpire.  A decision agreed to by any two
   will be binding.

   **a.**  Each party will pay its own appraiser and bear the other expenses of
   the appraisal and umpire equally, except as provided in **b.** below.
   **b.**  We will pay your appraiser's fee and the umpire's appraisal fee, if
   the following conditions exist:
   **(1)** You demanded the appraisal; and
   **(2)** The full amount of loss, as set by your appraiser, is agreed to by
   our appraiser or by the umpire.

   If there is an appraisal, we will still retain our right to deny the claim.

13.     Townes invoked the Appraisal Provision of the Policy.

14.     Travelers rejected the appraisal demand, contending that Townes sought appraisal

of issues beyond the scope of the Appraisal Provision, such as the existence and cause of damage

to all 3-tab composite asphalt roof shingles, and filed a declaratory judgment action in Illinois state court. The declaratory judgment action was dismissed because the Illinois circuit and appellate courts ruled that the partial denial of coverage and the rejection of the appraisal demand precluded Travelers from seeking a declaration as to the scope of the appraisal.

15. The dismissal of the state court action left the parties at an impasse regarding the scope of appraisal.

16. In lieu of Townes initiating its own legal action against Travelers, the parties agreed to proceed to appraisal subject to the terms of a Memorandum of Appraisal, attached hereto as Exhibit B.

17. The Memorandum of Appraisal contains the following provisions:

> 3. For purposes of this appraisal, the appraisal panel is allowed to determine: (a) causation (whether the damage was caused by the March 14, 2019 hailstorm), (b) the scope of damage (the extent or scope of the physical damage from the March 14, 2019 hailstorm), (c) the scope of repairing or replacing the damage from the March 14, 2019 hailstorm, (d) the cost of repairing or replacing the damage from the March 14, 2019 hailstorm, (e) matching (if appropriate and as defined below), and (f) whether the damage from the March 14, 2019 hailstorm is extensive enough to require employing a general contractor. However, pursuant to the Appraisal Provision, *Travelers retains its right to deny the claim.*
>
> 4. The appraisal award shall state separately the replacement cost value and the actual cash value of the damage *from the March 14, 2019 hailstorm*.

(Emphasis added).

18. The parties proceeded to appraisal with Geof Johnson serving as Towne's appraiser, Raymond Pawlak as Travelers' appraiser, and James Dombrowski as the umpire (the "Panel").

19.     On April 1, 2024, Townes presented Travelers with an Agreement Award, attached hereto as Exhibit C, that was executed by Towne's appraiser and the umpire, but not Travelers' appraiser.

20.     The Agreement Award states that the total replacement cost value for the property damage is $2,505,717.10.  The Agreement Award contains no statement that this damage resulted from the March 14, 2019 hailstorm.

21.     While two members of the Panel determined that all the roofs at the Property were damaged by hail and need to be replaced, the Panel did not determine when hail damaged any component of the Property.  See Declaration of Raymond Pawlak, attached hereto as Exhibit D and incorporated herein by reference.

22.     Hail less than 1.00 inch in diameter is incapable of damaging the type of shingles on the roofs of the Property.  See Declaration of Steven Smith, attached hereto as Exhibit E and incorporated herein by reference.

23.     According to the meteorological evidence, any hail which fell at or in the immediate vicinity of the Property on or around March 14, 2019 did not exceed 0.25 inches.  See Report of Dr. Jason R. Webster, attached hereto as Exhibit F and incorporated herein by reference.

24.     According to the meteorological evidence, no hail equal to or greater than 1.00 inch fell at or in the immediate vicinity of the Property during the Policy period of September 6, 2018 to September 6, 2019.  See Exhibit F.

25.     Coverage under the Policy is limited to "loss or damage you sustain through acts committed or events occurring: (1) During the policy period shown in the Declarations … ."

5

26.     The Panel was allowed to determine whether the damage was caused by the March 14, 2019 hailstorm and the extent or scope of the physical damage from the March 14, 2019 hailstorm.  It did not do so.

27.     The Panel was required to state separately the replacement cost value and the actual cash value of the damage from the March 14, 2019 hailstorm.  It did not do so.

28.     Regardless of what the Panel did or did not do, the Appraisal Provision in the Policy states that, "[i]f there is an appraisal, we [Travelers] will still retain our right to deny the claim," and, in their Memorandum of Appraisal, the parties affirmed that "Travelers retains its right to deny the claim."

29.     There is no evidence that the roof shingles on the Property sustained any hail damage during the policy period shown in the Policy declarations.

30.     An actual and justiciable controversy exists regarding Travelers' obligations to Townes under the Policy, the Memorandum of Appraisal, and the Agreement Award.

WHEREFORE, Plaintiff, THE TRAVELERS INDEMNITY COMPANY OF CONNECTICUT, prays this honorable court enter judgment in its favor declaring and determining that it has no liability to Defendant, TOWNES OF CEDAR RIDGE CONDOMINIUM ASSOCIATION, under the Policy, the Memorandum of Appraisal, and the Agreement Award for any alleged storm damage other than what it has paid for to date, and granting such other and further relief as is deemed just and proper.

Respectfully submitted,

/s/ Thomas B. Orlando
Thomas B. Orlando
Matthew S. Ponzi
FORAN GLENNON PALANDECH
PONZI & RUDLOFF PC
222 N. LaSalle Street, Suite 1400

Chicago, IL 60601
312-863-5000
torlando@fgppr.com
mponzi@fgppr.com

Attorney for Plaintiff,
THE TRAVELERS INDEMNITY
COMPANY OF CONNECTICUT